Joseph J. Walsh, Executor, Estate of Richard Pinhorn, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 6388.    Promulgated August 22, 1927.

Value of property for estate-tax purposes determined.

*Joseph J. Walsh, Esq.*, pro se.
*A. G. Bouchard, Esq.*, for the respondent.

Van Fossan: This is an appeal from the determination by the Commissioner of a deficiency of $1,260.49 in estate taxes. It is alleged that the Commissioner erred in increasing the value, as of May 30, 1922, the date of decedent's death, of a warehouse from $85,000 to $100,000 and of a restaurant business from $10,558.38 to $49,000.

FINDINGS OF FACT.

Petitioner is the duly qualified executor of the estate of Richard Pinhorn, deceased, late of the City and County of Denver, Colorado. Richard Pinhorn died on or about May 30, 1922, leaving a last will and testament which was duly admitted to probate in the County Court of the City and County of Denver on August 7, 1922, and on the same day petitioner, under and by virtue of the terms of said will and orders of said court, duly qualified as executor of the estate. At the time of his death Pinhorn was the owner of a warehouse, known as the Pinhorn Fireproof Warehouse, and a restaurant business, known as the Manhattan Restaurant.

Construction of the warehouse was begun in the winter of 1912 and completed in the spring of 1913. It was built by what is known in the industry as the Turner System, a flat slab type of construction, at a cost of $54,690, including wiring, plumbing, heating, and elevator. The building was originally designed for light storage and was intended for use as a furniture warehouse, but it was never used as such. Shortly after the completion of the building Pinhorn accepted for storage and did store sugar therein in such quantities

that the fourth, fifth, and sixth floors cracked and sagged, necessitating extensive repairs, which were made. The per foot capacity of the building was 150 pounds live load, and at the time the floors cracked they had been loaded to 600 pounds per foot live load. The building is well located for warehouse purposes and is in a growing district of increasing values. By 1922 building costs had so increased that to replace the warehouse would cost much more than the original cost. Prior to January 1, 1921, Pinhorn operated the warehouse and received a net return of $8,566.10 in 1917; $10,556.93 in 1918; $9,668.29 in 1919; $10,611.35 in 1920; and a gross return of $9,800 in 1921.

On March 12, 1920, Pinhorn leased the warehouse to the Carter Rice & Carpenter Paper Co. for a term of twelve years, commencing January 1, 1921, and ending January 1, 1933, at a gross annual rental of $9,800, with the option to renew for a term of ten years at a gross annual rental of $9,000 upon the same terms and conditions, and with the further option to purchase for $120,000. The lessee was obligated to make all ordinary repairs, bear the cost of upkeep and maintenance of the premises, and to make all desired alterations at his own expense, while the lessor was obligated to pay the taxes, water rent, insurance, and to make extraordinary repairs. The expense of the building to the lessor in 1922 was $2,361 for taxes, $214 for water tax, $175 (estimated) annual repairs, and $250 insurance, or a total of $3,000, leaving a net return to the lessor under the first term of the lease of $6,800, and of $6,000 under the second term of the lease (should the lessee exercise his option to renew).

Shortly after the death of Pinhorn the warehouse was appraised for state inheritance-tax purposes by a board of three appraisers, experienced real estate brokers of Denver, one of whom was appointed by the petitioner, the second by the Inheritance Tax Department of Colorado, and the third by the two previously designated appraisers. The property was valued by this board of appraisers at $100,000 as of May 30, 1922, which represented a compromise between the valuation of $115,000 set by the appraiser for the Inheritance Tax Department and the valuation of $85,000 set by the appraiser for the petitioner. The official appraiser for the County Court of the City and County of Denver, valued the property in May, 1922, at $100,000.

The fair value of the Pinhorn Fireproof Warehouse was $100,000 as of May 30, 1922, the date of Pinhorn's death.

The Manhattan Restaurant was started in 1896 by Pinhorn upon one lot, No. 25, known as 1635 Larimer Street, which premises he rented at that time. During the succeeding years he enlarged the business, leasing additional space adjoining the original location

and making extensive repairs and additions to the premises at his own expense, so that at the time of his death the restaurant was being operated on four lots, viz, all of lots 24 and 25 and the rear portions of lots 23 and 26, the front portions of the last named lots being occupied by a pawn shop.

Pinhorn conducted the restaurant upon a cash receipts and disbursements basis, with merely a daily record of receipts and expenditures.

The gross business of the restaurant during the five years preceding Pinhorn's death was $390,026.60 for 1917, $469,822.25 for 1918, $609,895.80 for 1919, $712,624.81 for 1920, and $677,467.57 for 1921, and the net income during the same period was $4,949.35 for 1917, $14,172.27 for 1918, $10,755.96 for 1919, $27,123.64 for 1920, and $20,069.47 for 1921. After the death of Pinhorn the estate adopted a fiscal year basis of accounting ending on May 31. The gross receipts of the restaurant following Pinhorn's death were $566,333.28 for the fiscal year 1923, $531,842.19 for the fiscal year 1924, and for the fiscal year ending August 6, 1925, (a new year being established for the purpose of executing the terms of decedent's will) the receipts were $483,079.99 plus cigar sales of $9,648.42, or a total of $492,728.41. By the terms of decedent's will petitioner was directed to, and did, operate the restaurant for a period of two years following his qualification as executor, at the expiration of which the business was turned over to the designated beneficiaries. The fiscal year ending August 6, 1925, was the first year of operation by the beneficiaries and for that year the business sustained a loss of $479.20.

In the early years of its operation by Pinhorn, the restaurant was situated in what was considered the heart of the business district, at 16th and Larimer Streets. During the succeeding years business moved eastward up 16th Street, until in May, 1922, the center of business was considered to be at 16th and Stout Streets, approximately five or six blocks from the Manhattan Restaurant, and the only restaurants remaining in the locality of the Manhattan Restaurant were of a cheaper character, the better class having moved uptown with business generally. During the time the business was operated by Pinhorn he practiced the policy of serving the best quality merchandise at the lowest possible price, and he devoted practically all his time from 7 a. m. to 11 p. m. each day to the business. The restaurant was open for business the entire 24 hours of the day.

Pursuant to the terms of the will, petitioner, after operating the business for two years, conveyed the restaurant to the designated beneficiaries, one of whom was William J. Pack, a nephew of the decedent, to whom a one-fourth interest had been bequeathed. In

January, 1923, two of the beneficiaries purchased the one-fourth interest of Pack for $8,500.

The fair value of the Manhattan Restaurant was $34,000 as of May 30, 1922, the date of Pinhorn's death.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and PHILLIPS.